EVERSMAN v CONCRETE CUTTING & BREAKING

Docket No. 183948. Submitted November 20, 1996, at Grand Rapids. Decided June 17, 1997, at 9:05 A.M. Leave to appeal sought.

Harry Eversman sought worker's compensation benefits for injuries he received when he was struck by an automobile, arguing that the injuries were incurred in the course of his employment with Concrete Cutting & Breaking. The plaintiff's job required him to travel to various work sites. While on a multiday assignment in Pennsylvania, the plaintiff was struck by an automobile when he was crossing a street as he returned from a bar at which he had had his evening meal to the motel at which he was staying during the work assignment. Following a hearing, a magistrate found that the nature of the plaintiff's work had put him at risk and that, therefore, his injuries occurred in the course of his employment and were compensable. On appeal to the Worker's Compensation Appellate Commission, plaintiff's employer and its insurer, Transamerica Insurance Company, argued that because the plaintiff had consumed alcoholic beverages not only at the meal immediately before the accident but also throughout the day of the accident because the plaintiff had been unable to work because of weather conditions, the plaintiff could not be said to have been engaged in the course of the employer's business at the time of the accident and that the injuries, therefore, were not compensable. The appellate commission set aside the magistrate's award of benefits, holding that the plaintiff's consumption of alcohol throughout the day constituted such a deviation from the business purpose that brought him to the city in which the accident occurred that the nexus between the plaintiff's employment and his subsequent injury was broken. The plaintiff appealed.

The Court of Appeals *held*:

Persons required to travel as a part of their business activities are considered to be continuously within the scope of their employment while on a business trip. Thus, generally, an injury to a traveling employee arises out of and in the course of employment when the employee's being away from home is for the employer's benefit and being at the place of injury is because of employment. Accordingly, employees who are required to eat and sleep away from home by reason of business travel are deemed to be within

the course of their employment while engaged in those activities. Here the plaintiff was returning from having an evening meal to the motel at which he was staying for the duration of his job assignment and, thus, was acting within the course of his employment. The fact that he had been drinking and was intoxicated at the time of the accident is not dispositive of the question whether he had deviated from the business purpose of his being at the place the accident occurred, nor does the record establish his drinking contributed to the accident.

Reversed and remanded.

Worker's Compensation — Injuries Arising in Course of Employment — Employees Required to Travel.

Employees required to travel as a part of their business activities are considered to be continuously within the scope of their employment while on a business trip; generally, an injury to a traveling employee arises out of and in the course of employment when the employee's being away from home is for the employer's benefit and being at the place of injury is because of employment; accordingly, employees who are required to eat and sleep away from home by reason of business travel are deemed to be within the course of their employment while engaged in those activities.

*Jensen & Stuart* (by *D. Scott Stuart* and *Joseph L. Milanowski*), for the plaintiff appellant.

*Wheeler Upham, P.C.* (by *Gary A. Maximiuk* and *Jack L. Hoffman*), for Auto-Owners Insurance Company.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for the defendants.

Before: Reilly, P.J., and MacKenzie and B. K. Zahra[*], JJ.

Per Curiam. Plaintiff appeals by leave granted from an order of the Worker's Compensation Appellate Commission (WCAC) denying worker's compensation

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

benefits and reversing a magistrate's open award of benefits. We reverse and remand.

Plaintiff operated a special machine designed to cut and break concrete, and his job required him to travel to various work sites. In July 1990, plaintiff went on a multiday assignment that took him to several states, including a job site outside Pittsburgh, Pennsylvania. Plaintiff and his partner, Stanley Stewart, rented a motel room in a commercial area on a four-lane road and then worked on July 11. On July 12, plaintiff and Stewart arrived for work, but their job was canceled for the day because of bad weather.

Plaintiff and Stewart left the job site at about 9:00 A.M. and returned to their motel room. In the afternoon they did their laundry at a nearby laundromat, and on their way back to their motel they stopped for food at a bar. The bar did not serve food, but plaintiff and Stewart stayed to drink beer and play pool. They returned to their room at about 4:00 P.M. They then went to another lounge in the area, where they again drank some beer and played pool. Afterward, they went back to their room and drank more beer.

At about 9:00 P.M., plaintiff and Stewart left their room and went to eat at a bar across the street from their motel. They drank a beer before their meal, ordered a beer with their meal, and ordered beer after their meal. Stewart walked back across the street to the motel. Plaintiff stayed behind to talk to someone.

Plaintiff was hit by a car when he was crossing the street to return to the motel room. An accident report indicates that the accident occurred at 10:19 P.M. Plaintiff had crossed two lanes and a median and was struck when he was in the third of the four lanes he

needed to cross to return to his room. According to the accident report, the car that struck plaintiff had pulled out from behind another car in order to pass it.

Stewart testified that he and plaintiff drank about the same amount of beer throughout the day, at least until their meal. He could not remember exactly how much beer they consumed, but Stewart thought he was probably too drunk to drive. Stewart did not think that he was personally in danger in crossing the street to return to the motel room, and he did not have any doubt in his mind that plaintiff should have been able to walk across the street and return to the room. A blood test at the hospital to which plaintiff was taken showed his blood alcohol content to be 0.23 percent.

The magistrate found that the nature of plaintiff's job put him at risk and therefore plaintiff's injuries occurred during the course of his employment. The magistrate relied upon *Whetro v Awkerman*, 383 Mich 235; 174 NW2d 783 (1970), where an employee was injured when a tornado destroyed the building where he was working.

The WCAC found the case controlled by the "much more precise law" regarding "special missions and deviation from such missions." The WCAC relied upon *Bush v Parmenter, Forsythe, Rude & Dethmers*, 413 Mich 444; 320 NW2d 858 (1982), and *Jones v TRW, Inc*, 139 Mich App 751; 362 NW2d 801 (1984). On the basis of the "very persuasive evidence that plaintiff was very drunk after having engaged in a long day of alcohol consumption," the WCAC concluded that plaintiff's activities constituted "a deviation from the special mission so great that it dwarfed the business purpose of the mission and thus broke the nexus

between plaintiff's employment and his subsequent injury."

The law concerning "special missions" relied upon by the WCAC evolved at least in part in response to the general rule that injuries sustained by employees going to and from work are not compensable. *Bush, supra,* pp 451-452. Indeed, the cases relied upon by the WCAC, *Bush, supra,* and *Jones, supra,* involved employees who had attended a special function connected with their employment and who were injured when returning to their homes. The rule of law evinced in *Bush* and *Jones* does not find a sound basis for its application in the facts and circumstances of this case. There was nothing "special" about the mission plaintiff was on for his employer; plaintiff was in Pennsylvania to perform his regular employment. Instead, plaintiff was a "traveling employee" whose work entailed extended travel away from home.

Traveling employees on a business trip are considered to be continuously within the scope of their employment during their trip, except when a distinct departure for a personal errand can be shown. 2 Larson, Workers' Compensation Law, § 25.00, p 5-275. Thus, for traveling employees, the "arising out of and in the course of employment" tests are generally met by their being away from home for their employer's benefit and being at the place of injury because of their employment. See *Olinger Const Co v Mosbey,* 427 NE2d 910 (Ind App, 1981).

Like other employees who travel for days at a time, plaintiff had to eat and sleep. Injuries arising out of the necessity that traveling employees sleep in hotels or eat in restaurants away from home are usually held

compensable. Larson, *supra*, p 5-275. Section 25.21(a) of the Larson treatise cites decisions from several jurisdictions that awarded benefits for a traveling employee, whether or not on call, who was injured in an activity arising out of the need for the employee to sleep or eat away from home. Specifically mentioned are cases where injuries were sustained in the process of getting meals or when a "traveling man . . . is struck by an automobile between his hotel and a restaurant." Larson, *supra*, pp 5-282—5-283.

A case with facts similar to those in this case is *Epp v Midwestern Machine Co*, 296 Minn 231; 208 NW2d 87 (1973). In *Epp*, the traveling employee, a Minnesota truckdriver, was instructed by his employer to stay at a Pennsylvania motel from Saturday until Monday so that he could pick up some machinery his employer had purchased. The employee, "to pass some time—during a considerably long waiting period—crossed the road to [a] tavern and had some drinks until closing time." *Id.*, p 234. He was killed at approximately 2:30 A.M. when he was struck by an automobile while he was crossing the road, apparently to return to his motel. The Minnesota Supreme Court stated that on these facts, " 'the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment.' " *Id.*, quoting *Robards v New York Division Electric Products, Inc*, 33 App Div 2d 1067, 1067-1068; 307 NYS2d 599 (1970). The court concluded:

> [T]he employer contemplated, because of the work schedule of the employee, that he would be exposed to the hazards of being upon a highway at any hour of the day or

night, either driving his truck or having to cross it for
meals, refreshments, or to return to his motel room.
Accordingly, we cannot say that [the] employee's activity
was unreasonable and that the risk to which he was
exposed did not directly flow as a natural incident of his
employment under the circumstances of this case. [*Epp*,
*supra*, pp 234-235.]

In this case, as a traveling employee, plaintiff was
in the course of his employment throughout July 12,
1990. The evidence does not show a distinct depar-
ture for a personal errand. Plaintiff had to eat, and he
had to sleep. He was injured when he was returning
from dinner directly to his motel room. Returning to
his room after a meal was in the course of plaintiff's
employment as a traveling employee.

The fact that plaintiff had been drinking or was
intoxicated at the time of the accident is not itself
dispositive. An employee who became intoxicated at
an employer-sponsored event and who later died in
an automobile accident was entitled to benefits in
*Allison v Pepsi-Cola Bottling Co*, 183 Mich App 101;
454 NW2d 162 (1990). More importantly, the evidence
in this case did not show that plaintiff's drinking con-
tributed to the accident in which he was injured.
While he might have been too intoxicated to operate
an automobile, there was no evidence that plaintiff
was too intoxicated to walk across the street. Stewart
indicated that plaintiff was not staggering and that he
was confident plaintiff could return safely to the
motel room, just as he had. Our result might be differ-
ent if plaintiff had been driving, if plaintiff had been
"falling down" drunk, or if plaintiff had continued
drinking at the bar for an inordinate length of time

after having finished his meal, but those are not the facts of this case.

Because of the facts and nature of this case, there can be no merit in defendants' arguments based upon MCL 418.301(3); MSA 17.237(301)(3) or MCL 418.305; MSA 17.237(305). MCL 418.301(3); MSA 17.237(301)(3) precludes benefits for an injury incurred in the pursuit of an activity for which the major purpose is social or recreational. While eating, drinking, and sleeping are personal activities, under plaintiff's circumstances—those of a traveling employee—these activities were within the continuity of plaintiff's employment. MCL 418.305; MSA 17.237(305), which precludes benefits when employees are injured because of their own intentional and wilful misconduct, is inapplicable here. Plaintiff was injured by a car operated by someone else. To the extent his intentional drinking of beer was involved, it was not shown that his drinking contributed to the accident.

Reversed and remanded for entry of an order awarding benefits. We do not retain jurisdiction.