LAYMAN v NEWKIRK ELECTRIC ASSOCIATES, INC

Docket No. 105245. Argued April 7, 1998 (Calendar No. 4). Decided
July 30, 1998. Rehearing denied 459 Mich 1204.

William D. Layman was voluntarily paid worker's compensation by
Newkirk Electric Associates, Inc., from October 1991 through
March 22, 1992, for a work-related injury to his back that occurred
on October 17, 1991. Layman then worked for Henkels & McCoy,
Inc., from June 29, 1992, to August 12, 1992, where he was unable
to perform all his duties because of pain. Following this employ-
ment, he turned down other jobs and filed claims for worker's com-
pensation against both employers. A magistrate found continuing
disability from October 17, 1991, and awarded open-ended bene-
fits. Newkirk Electric appealed. The Worker's Compensation Appel-
late Commission reversed, and denied the plaintiff's claim. The
Court of Appeals, CORRIGAN, P.J., and SAAD and YOUNG, JJ., denied
leave to appeal (Docket No. 187340). The plaintiff appeals.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT,
and Justices BRICKLEY and CAVANAGH, the Supreme Court *held*:

The Worker's Compensation Appellate Commission exceeded its
authority when it made impermissible findings of fact in the
absence of findings by the magistrate. The magistrate is the proper
person to make findings of fact.

1. The Legislature intended that the magistrate have the final
word regarding most fact finding and that the commission play a
more limited role. In this case, the commission went beyond its leg-
islatively prescribed function of reviewing the magistrate's decision
and substituted its interpretation of the evidence for the findings of
the magistrate.

2. The commission engaged in impermissible fact finding in the
absence of findings by the magistrate, and erred in disregarding
certain of the magistrate's findings and reversing the award of ben-
efits. Where a factual finding needs to be made, but has not been
rendered by the magistrate, the case should be remanded to the
magistrate. Where a magistrate's findings are insufficient for appel-
late review, nothing in the worker's compensation act prevents the
Supreme Court or the Court of Appeals from remanding the case to
the magistrate for additional fact finding.

Justice BOYLE, concurring, stated that the Worker's Compensation Appellate Commission was not free to exercise its statutory authority to make its own findings absent adequate fact finding by the magistrate. Because the magistrate's factual finding was inadequate for a qualitative and quantitative review by the commission to determine if there was substantial evidence to support a determination of continuing benefits, a remand to the magistrate is required for such a determination.

Vacated and remanded.

Justice WEAVER, joined by Justice TAYLOR, dissenting, stated that the Worker's Compensation Appellate Commission did not err in finding that the plaintiff suffered from a preexisting arthritic condition of the aging process, which must be evaluated under the significant-manner test. It had the authority to apply this test and to make the requisite findings of fact in doing so. The commission has authority to make findings of fact, given the plain language of MCL 418.861a *et seq.*; MSA 17.237(861a) *et seq.* The Supreme Court recognized such fact-finding authority in *Holden v Ford Motor Co*, 439 Mich 257 (1992), and *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507 (1997).

MCL 418.861a(14); MSA 17.237(861a)(14) clearly provides for conclusive fact finding by the commission. Subsection (10) allows the commission to adopt any part of the magistrate's findings, and would impliedly allow the commission to both disagree with and make additional findings where so required. Further, subsection 12 vests discretion regarding the sufficiency of the record with the commission. Under this subsection, remands are appropriate only where the record is incomplete or insufficient for review. Where requisite facts exist on the record, there is no need to remand.

In this case, the magistrate's opinion is clear, but incomplete because he failed to make any finding regarding the relationship of the plaintiff's condition to the aging process. Such a determination was necessary, given the uncontested evidence of the plaintiff's preexisting arthritic condition. In light of this failure, the commission had the authority to make the requisite findings of fact. Because the record itself contains sufficient facts from which to make the requisite findings, there is neither any need nor statutory requirement that the Supreme Court or the commission remand to the magistrate.

*Robison & Sims, P.C.* (by *John M. Sims*), for the plaintiff-appellant.

*Plunkett & Cooney, P.C.* (by *Paul F. Paternoster*), for defendant-appellee Newkirk Electric Associates, Inc.

*Martin L. Critchell* for defendant-appellee Henkels & McCoy, Inc.

Amici Curiae:

*Daryl Royal* and *Cooper, Bender, Mohr & Iddings, P.C.* (by *David J. Cooper*), for Michigan Trial Lawyers Association.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Michigan Defense Trial Counsel.

KELLY, J. We granted leave in this case to decide (1) whether the Worker's Compensation Appellate Commission improperly made fact findings in the absence of findings by the magistrate, and (2) whether, on remand from an appellate court, additional fact findings should be undertaken by the magistrate or the commission. We conclude that the commission exceeded its authority in this case and that the magistrate is the proper person to make additional fact findings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant William D. Layman is a journeyman lineman who worked without physical restrictions for approximately thirty-five years, despite having a preexisting condition of spinal arthritis. In July 1991, his union hall assigned him to a job with defendant-appellee Newkirk Electric Associates, Inc.

On October 17, 1991, plaintiff was participating in a Newkirk project that involved tearing down large electrical cables. The assignment required him to

work on utility poles from the elevated bucket of a bucket truck. He spent six to eight hours in that position. Because the distance between the utility poles was short, he remained in the bucket while the truck was moved from pole to pole.

The brakes on the bucket truck were malfunctioning, causing him to be thrown about inside the bucket whenever the truck stopped. Plaintiff was unable to anticipate which way the truck would lunge. As a result, his waist was repeatedly banged against the rim of the bucket. He was also unable to protect himself because his hands were occupied with preventing an overhead cable from falling on light fixtures and pedestrians.

Plaintiff finished the work day, but he had difficulty getting out of bed the following Monday morning because of soreness in his back. He never returned to work at Newkirk. Newkirk voluntarily paid worker's compensation benefits to plaintiff from October 1991, through March 1992, but not afterward, because its insurer disputed Newkirk's liability for benefits.

Plaintiff worked for defendant-appellee Henkels & McCoy, Inc., from June 29, 1992, to August 12, 1992. This job required him to climb utility poles with a hook and belt. Plaintiff was unable to perform all his duties. Other workers did some of the work for him, and it was necessary for him to take several aspirin each day in order to tolerate his pain. He turned down the jobs he was offered following his employment with Henkels & McCoy.

Plaintiff filed a claim for worker's compensation benefits on March 24, 1992. The case proceeded to a hearing before Magistrate B. Lloyd Blair in Detroit on July 21, 1993. At the hearing, plaintiff testified that he

no longer was able to perform the jobs he had done in the past. He said he had difficulty even walking, and it was necessary for him to stop and rest whenever he walked as much as half a mile.

The medical testimony generally supported the conclusion that plaintiff has a bad back, but there was disagreement concerning the cause and the severity of his condition.

In a decision mailed August 16, 1993, the magistrate awarded open-ended benefits to plaintiff. He found that plaintiff was a believable witness, that his account of the October 17, 1991, incident was unrebutted, and that he suffered a work-related aggravation of a preexisting back condition on that date.

Defendant Newkirk appealed to the Worker's Compensation Appellate Commission. On June 14, 1995, the commission reversed the magistrate's decision, and denied plaintiff's claim for benefits. 1995 Mich ACO 1389.

The Court of Appeals denied leave to appeal.[1] This Court granted plaintiff's application for leave to appeal.[2]

## II. ANALYSIS

This Court is asked to review a decision of the Worker's Compensation Appellate Commission. According to the Michigan Constitution, "Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28. Additionally, MCL 418.861a(3); MSA 17.237(861a)(3) provides:

---

[1] Unpublished order, entered December 14, 1995 (Docket No. 187340).

[2] 456 Mich 891 (1997).

Beginning October 1, 1986 findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion.

This Court recently stated in *Goff v Bil-Mar Foods, Inc (After Remand):*[3]

[W]here a party claims that the WCAC has exceeded its power by reversing the magistrate, meaningful review must begin with the magistrate's decision, because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC is exceeding its authority.

### A. THE MAGISTRATE'S FINDINGS

The magistrate recognized that Newkirk had voluntarily paid worker's compensation benefits to plaintiff between October 1991, and March 1992, and was contesting plaintiff's disability only after March 1992. After reviewing plaintiff's testimony and that of the medical experts, the magistrate found an October 17, 1991, injury date and a continuing disability from the injury.

John S. Warner, D.C., a chiropractor who began treating plaintiff before the incident with Newkirk,[4] testified that plaintiff suffered from either a com-

---

[3] 454 Mich 507, 513; 563 NW2d 214 (1997).

[4] Plaintiff consulted with Dr. Warner about his back pain on May 22, 1990. He received five office treatments between that date and January 13, 1991. Dr. Warner said plaintiff improved significantly during this treatment. He did not see plaintiff again until October 21, 1991, four days after the incident with Newkirk.

pressed nerve root or a herniated disc at the L5-S1 interval. He said plaintiff should avoid bending and twisting and should lift no more than ten pounds.

Chiropractor Wallace Ross examined plaintiff on February 25, 1992, pursuant to a request by CNA Insurance Company. Dr. Ross detected arthritis throughout the spine. He estimated that the condition had been present for approximately ten years. He opined that the October 17, 1991, incident could have caused muscle strain, but that the condition would have been resolved after several weeks. He said plaintiff should not lift more than thirty-five pounds, and that his condition would improve if he obeyed restrictions and performed strengthening exercises.

Christopher Schaiberger, M.D., a neurologist, examined plaintiff on June 3, 1992, pursuant to a referral for a neurological examination of plaintiff's lower back and extremities. He found degenerative arthritis in the lumbar region, with spurring at L5-S1, and he expressed the opinion that these problems existed before the incident on October 17, 1991. He felt the injury could have originated with trauma or could have developed spontaneously. He recommended no bending, no twisting, and no lifting over fifty pounds without help.

Harvey Andre, M.D., who examined plaintiff on March 25, 1993, found degenerative arthritis at L3 and L4-5. He said plaintiff could perform only light work and that he should avoid stooping, bending, twisting, pushing and pulling, and should lift no more than five pounds.

The magistrate found plaintiff believable, his account of the accident unrebutted, and ruled that plaintiff suffered a work-related aggravation of a pre-

existing back condition on October 17, 1991. The magistrate explained:

> There is agreement between Drs. Ross and Schaiberger that plaintiff has arthritic changes in his entire spine which predated October 17, 1991. I so find. And, although Dr. Schaiberger acknowledged that plaintiff's problems stemming from his arthritis could have originated spontaneously, I find that they did not. The theory of spontaneous initiation in this case flies in the face of plaintiff's activities of October 17, 1991. To find spontaneous origin here, one would have to completely ignore plaintiff's undisputed testimony that he was banged around waist height in the bucket of a bucket truck which turned out to have had an improperly functioning master brake cylinder. Accordingly, I find the experience of October 17, 1991, combined with plaintiff's arthritic condition and resulted in his current low-back disability.
>
> All the experts agree plaintiff is disabled by arthritis and should be restricted from various activities which his job as a lineman would demand. I therefore find an injury date of October 17, 1991, and continuing disability from said injury.
>
> I do not find that work plaintiff did for Henkels & McCoy, Inc. subsequent to leaving defendant, Newkirk Electric Associates, Inc., changed plaintiff's basic underlying condition. No specific injury or occurrence was alleged. Plaintiff was "carried" by co-workers and could only tolerate what little work he did by taking 12 to 16 aspirins per day. He definitely was disabled when he went to work for Henkels & McCoy, Inc., but this job did not contribute to or aggravate his underlying condition. I find no July, 1992 injury date.

On the basis of his findings, the magistrate awarded open-ended benefits to plaintiff.

### B. THE COMMISSION'S REVIEW

Defendant Newkirk appealed to the Worker's Compensation Appellate Commission. Among other mat-

ters, Newkirk argued that the magistrate committed
legal error requiring reversal by not applying the sig-
nificant-manner standard of MCL 418.301(2); MSA
17.237(301)(2). The standard provides:

> Mental disabilities and conditions of the aging process,
> including but not limited to heart and cardiovascular condi-
> tions, shall be compensable if contributed to or aggravated
> or accelerated by the employment in a *significant manner*.
> [Emphasis added.]

Plaintiff argued that the magistrate based his find-
ing of injury on MCL 418.301(1); MSA 17.237(301)(1).
It states:

> An employee, who receives a personal injury arising out
> of and in the course of employment by an employer who is
> subject to this act at the time of the injury, shall be paid
> compensation as provided in this act.

The commission noted that there was "no dispute
that plaintiff suffers from a type of arthritis which is a
condition of the aging process. As such, the signifi-
cant contribution test of MCL 418.301(2) [MSA
17.237(301)(2)] applies." 1995 Mich ACO 1391. It con-
cluded that the magistrate had clearly erred in failing
to apply the significant-manner test. The commission
then disregarded some of the magistrate's factual
findings and made its own findings. The panel said
that an omission by the magistrate made it appropri-
ate for it to exercise its limited fact-finding powers
under *Holden v Ford Motor Co*, 439 Mich 257; 484
NW2d 227 (1992), and *Woody v Cello-Foil Products*

*(On Remand)*, 204 Mich App 259; 514 NW2d 228 (1994).[5]

The panel then undertook to determine whether plaintiff's work-related injury was a significant factor in causing his disability. It found that plaintiff's work was not a significant factor in causing his disability for the following reasons: Dr. Warner's testimony was equivocal at best in regard to the significance of the work incident in relation to plaintiff's overall condition. Dr. Schaiberger's testimony "fell far short of opining that work was a significant factor." 1995 Mich ACO 1394. Dr. Ross "testified that plaintiff's work incidents at most caused a temporary symptomatic aggravation, as opposed to a permanent pathological aggravation . . . ." *Id.* at 1395. The commission concluded:

> We are not persuaded that the workplace incidents plaintiff complained of were of such a nature that they would have significantly contributed to plaintiff's already existing complaints caused by his degenerative arthritic condition. Certainly, when the record below is reviewed as a whole, it does not support a finding of a significant or pathological aggravation of plaintiff's longstanding arthritic condition. Accordingly, we reverse the Magistrate's open award of benefits. [*Id.*]

### III. IMPERMISSIBLE FACT FINDING BY THE COMMISSION

The commission engaged in improper fact finding, initially, when it concluded that plaintiff's arthritis was a condition of the aging process. A review of the magistrate's opinion shows that he found "arthritic

---

[5] After the commission issued its decision in the instant case, we reversed the Court of Appeals decision in *Woody (After Remand)*, 450 Mich 588; 546 NW2d 226 (1996).

changes in [Mr. Layman's] entire spine which pre-dated October 17, 1991." This does not equate with a finding that the arthritis was a condition of the aging process. While arthritis may be related to the aging process, it is certainly not always aging-related. *Taber's Cyclopedic Medical Dictionary.* Arthritis is often caused by repetitive stress on a certain part of a person's body, and can occur at any time in a person's lifetime.

The magistrate did not make a specific finding regarding whether plaintiff's arthritis was part of the aging process. Whether a plaintiff's arthritis is part of the aging process is the type of medical factual inquiry that is reserved for the magistrate's fact-finding powers. Without a finding by the magistrate, the commission is not entitled to invoke the signifi-cant-manner test.

The commission cites this Court's decisions in *Holden* and the Court of Appeals decision in *Woody* as justification to exercise its limited fact-finding powers and to then apply the significant-manner test. However, we have since reversed the *Woody* decision.

In *Woody v Cello-Foil Products,* we examined (1) whether the magistrate made sufficient findings of fact regarding work-related causation, and (2) whether those findings were supported by substantial, material, and competent evidence on the whole record. The Court of Appeals had ruled that, because the magistrate made no findings regarding the origin of the plaintiff's sensitivity, the commission was free to make a factual finding of its own. *Woody,* 204 Mich App 262. In reversing the decision of the Court of Appeals, we held:

> The magistrate did not make findings of fact that were
> sufficiently detailed for us to separate the facts found from
> the law applied. Further, the conclusory findings are inade-
> quate because we need to know the path taken through the
> conflicting evidence, the testimony adopted, the standards
> followed, and the reasoning used to reach his conclusion.
> [*Woody v Cello-Foil Products (After Remand)*, 450 Mich
> 588, 597; 546 NW2d 226 (1996).]

We remanded the case to the magistrate "for further
proceedings and detailed findings of fact regarding
whether the plaintiff's injury was caused by her expo-
sure to MEK at defendant company." *Id.*, citing *Kos-
tamo v Marquette Iron Mining Co*, 405 Mich 105, 138;
274 NW2d 411 (1979).

In the case at bar, it is not clear whether the magis-
trate based his decision on subsection 1 or subsection
2 of MCL 418.301; MSA 17.237(301). The commission
stated: "A review of the Magistrate's opinion reveals
that he failed to apply the 'significant manner' test,
*apparently* applying a less stringent 'causal relation-
ship' standard . . . ." 1995 Mich ACO 1392. Plaintiff
argues that evidence that the magistrate applied the
significant-manner test is shown by the magistrate's
use of terms like "originated," "initiation," and
"resulted."

For the commission to find that those terms clearly
convey the magistrate's application of the significant-
manner test requires the commission "to speculate
regarding the facts and the legal reasoning that the
magistrate relied on to reach his conclusion," which it
cannot do. *Woody*, 450 Mich 597.

The commission also cited this Court's ruling in
*Holden, supra,* to support its decision to enter into
the fact-finding arena. It remarked that, in both the

case at bar and in *Holden*, the magistrate had failed to make certain findings of fact essential to a legal determination regarding causation. In *Holden*, the WCAC ruled that the magistrate's findings and conclusions were not supported by substantial evidence on the whole record, and then proceeded to make its own findings. This Court found that the commission did not exceed its legislatively prescribed reviewing function.

Any interpretation of *Holden* as permitting the commission to make original fact finding on issues overlooked by the magistrate is refuted by our subsequent decision in *Woody*. We hold in the instant case, as we did in *Woody*, that the proper person to make findings of fact is the magistrate. On remand, the magistrate must be given the task of providing comprehensive findings of fact while applying the proper legal standard.

The Legislature intended that the magistrate have the final word regarding most fact finding and that the commission play a much more limited role:

> A primary purpose of [1985 PA 103] is to make the decisions of the magistrates final in most cases. While an appeal can be filed, it is intended that relatively few appeals will be successful. The number of members of the workers' compensation appellate tribunal has been reduced because the appellate role has been reduced from factfinder to a limited review for error. The decision of the magistrates will in most cases constitute the final decision. [*Civil Service Comm v Dep't of Labor*, 424 Mich 571, 621; 384 NW2d 728 (1986), amended by 425 Mich 1201 (1986).]

We agree with plaintiff that the commission went beyond its legislatively prescribed function of reviewing the magistrate's decision and substituted its inter-

pretation of the evidence for the findings of the magistrate.

In *Goff, supra* at 538, this Court explained:

> If the magistrate's decision is reasonably supported in the record by any competent, material, and substantial evidence, then it is conclusive and the WCAC must affirm. If it does not, it is exceeding the scope of its reviewing power and *impermissibly substituting its judgment* for the magistrate's. In reviewing the magistrate's decision, the WCAC must do so with sensitivity and deference toward the findings and conclusions of the magistrate in its assessment of the record. If in its review the WCAC finds that the magistrate did not rely on competent evidence, it must carefully detail its findings of fact and the reasons for its findings grounded in the record. If after such careful review of the record the WCAC finds that the magistrate's determination was not made on the basis of substantial evidence and is therefore not conclusive, then it is free to make its own findings. In such circumstances, the findings of fact of the WCAC are conclusive if the commission was acting within its powers. Ultimately, the role of the Court of Appeals and this Court is only to evaluate whether the WCAC exceeded its authority. [Emphasis added.]

We hold that the commission exceeded its authority when it made impermissible findings of fact in the absence of findings by the magistrate.

A reviewing court should not identify alternative findings that could be supported by substantial evidence and supplant the agency's findings with them. *Arkansas v Oklahoma*, 503 US 91, 113; 112 S Ct 1046; 117 L Ed 2d 239 (1992), and see *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994). In the instant case, the commission "gave only passing lip service" to the requirement that the commission be aware of the deference due the magistrate. *Goff, supra* at 536, citing *Holden, supra*. The commission justified impos-

ing its own factual conclusions because the magistrate did not use the magic words "significant manner."

It essentially turned the substantial-evidence standard on its head when it embarked on its own fact-finding journey. *Arkansas, supra.*

MCL 418.861a(12); MSA 17.237(861a)(12) provides:

> The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review.

Where a magistrate's findings are insufficient for appellate review, nothing in the Worker's Disability Compensation Act prevents this Court or the Court of Appeals from remanding the case to the magistrate for additional fact finding. *Woody,* 450 Mich 588. The office of the magistrate is the appropriate place for additional fact finding because only the magistrate has the opportunity to observe live testimony and argument.[6]

The commission engaged in impermissible fact finding in the absence of findings by the magistrate. The findings that the magistrate did make were made on the basis of competent, material, and substantial evidence. The magistrate did find an injury date of October 17, 1991, and continuing disability from that date. Unfortunately, the magistrate did not clearly delineate which standard he applied to find the injury. Additionally, it is not clear that the magistrate found

---

[6] We acknowledge that, in this case, the medical expert testimony was provided by deposition. However, the magistrate did have the opportunity to observe plaintiff and did specifically find plaintiff to be credible.

that plaintiff's arthritis is a condition of the aging process, thus requiring the application of the significant-manner test. The commission was in error when it stated that the magistrate found that plaintiff suffers from a preexisting aging condition. The magistrate did not make that finding. A determination on the issue must be made on remand.

We conclude that the commission erred in disregarding certain of the magistrate's findings and reversing the award of benefits. Where a factual finding needs to be made, but has not been rendered by the magistrate, the case should be remanded to the magistrate. When the commission finds that the magistrate has failed to make necessary fact findings, it should remand the case to the magistrate for that purpose. See *Woody*, 450 Mich 588.

We hold that the commission must remand this case, and other cases where fact findings are incomplete, to the magistrate for the requisite fact finding. To hold otherwise would deprive parties of any meaningful review of factual findings by the commission. The commission must review the magistrate's findings of fact to determine whether they are supported by competent, material, and substantial evidence.

### IV. CONCLUSION

We vacate the June 14, 1995, decision of the Worker's Compensation Appellate Commission. We remand this case to the magistrate to determine whether plaintiff's arthritis is a condition of the aging process, and, if so, to determine whether the significant-manner test of MCL 418.301(2); MSA 17.237(301)(2) applies to this case. The magistrate shall then reconsider whether plaintiff's work-related

injury contributed to or aggravated or accelerated his disability in a significant manner. In order to facilitate subsequent appellate review, the magistrate is directed to analyze the evidence and make detailed findings under the significant-manner test, even if he determines that the test is not applicable in this case.

MALLETT, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with KELLY, J.

BOYLE, J. (*concurring*). I agree that the magistrate did not make sufficient findings of fact because he did not make a finding whether there was a significant workplace aggravation of the underlying arthritic condition of the spine. I also agree that, given the absence of such findings, the record is inadequate for review and the Worker's Compensation Appellate Commission is not free to make its own findings. In *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507; 563 NW2d 214 (1997), we observed that, if the WCAC finds on review that the magistrate did not rely on competent evidence, the WCAC must detail its findings and their basis in the record.[1] If the WCAC properly applies this standard, "it is free to make its own findings." *Id.* at 538. However, if the WCAC does not base its decision on the evidence in the record as a whole and misapplies the substantial evidence standard, it exceeds its statutory authority. Requiring the WCAC to carefully detail its findings of fact and the reasons for its findings grounded in the record[2] is

[1] As noted in *Goff, supra* at 528, n 16, the Court of Appeals decision in *York v Wayne Co Sheriff's Dep't*, 219 Mich App 370; 556 NW2d 882 (1996), illustrates the correct analysis that the courts should employ in determining whether the WCAC has exceeded its authority.

[2] *Goff, supra* at 538.

consistent with limited judicial review, and the Legislature's elimination of de novo administrative review. MCL 418.861a(3); MSA 17.237(861a)(3).

Insuring the integrity of the respective roles within the agency likewise requires that the magistrate must make initial, essential, and adequate factual findings.[3] Obviously, the magistrate need not discuss every aspect of the evidence, but here, as in *Goff*, a finding of significant aggravation is a prerequisite to review. To hold otherwise would invite the WCAC to use the absence of the magistrate's finding as a justification for de novo conclusions.

In summary, the magistrate's factual finding was inadequate for a qualitative and quantitative review to determine if there was substantial evidence to support the magistrate's determination of continuing benefits. Therefore, the case must be remanded to the magistrate to make this determination.[4]

The statute in terms neither requires nor precludes a remand to the magistrate under the circumstances presented here. However, because the framework for review established by the Legislature is promoted by adequate fact finding by the magistrate, I join the result of the lead opinion and would vacate the decision of the WCAC and remand the case to the magistrate for further proceedings as indicated.

WEAVER, J. (*dissenting*). We are once again faced with interpreting the relative roles of the various

---

[3] *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992).

[4] See *Haske v Transport Leasing, Inc*, 455 Mich 628, 664, n 40; 566 NW2d 896 (1997). If the record is insufficient for purposes of review, the case is remanded to the magistrate rather than to the WCAC in order to allow the magistrate to establish a complete record for purposes of review by the WCAC.

administrative and judicial parties in the worker's compensation arena. I must write separately because I find the majority is rewriting the statutory rules regarding these roles.

In this case, we are asked to determine whether the Worker's Compensation Appellate Commission has the authority to make initial findings of fact when the magistrate fails to do so. The magistrate found that there were arthritic changes in the plaintiff's entire spine that predated his injury and that the injury contributed to plaintiff's arthritic condition. The magistrate, therefore, granted plaintiff an open award of benefits.[1] On appeal, the commission found that the magistrate had failed to make a factual finding regarding whether plaintiff's undisputed preexisting, degenerative arthritis was a "condition[] of the aging process" under MCL 418.301(2); MSA 17.237(301)(2).[2]

---

[1] The magistrate acknowledged that plaintiff had arthritic changes throughout his spine that predated the 1991 injury. As to causation, the magistrate found:

> [T]he experience of October 17, 1991, *combined with* plaintiff's arthritic condition *and resulted* in his current low-back disability. [Emphasis added.]

The magistrate's opinion merely noted the preexistence of an arthritic condition, but failed to probe the matter further, presumably applying MCL 418.301(1); MSA 17.237(301)(1). Subsection 301(1) of the Worker's Disability Compensation Act requires that an employee "who receives a personal injury arising out of and in the course of employment by an employer" subject to the act "shall be paid compensation . . . ."

[2] Subsection 301(2), which sets forth the significant-manner test, imposes a higher burden of proof and requires a closer causal nexus than an award under subsection 301(1). *Farrington v Total Petroleum, Inc*, 442 Mich 201; 501 NW2d 76 (1993). Subsection 301(2) provides, in relevant part:

> Mental disabilities and *conditions of the aging process*, including but not limited to heart and cardiovascular conditions, *shall be compensable if contributed to or aggravated or accelerated by the*

In the absence of such a finding by the magistrate, the commission found that plaintiff suffered from a preexisting arthritic "condition[] of the aging process," which should have been evaluated under the "significant manner" test of MCL 418.301(2); MSA 17.237(301)(2). The commission then reversed the award of open benefits because it found that the plaintiff's work-related injury did not contribute to his disabled status in a significant manner.

I agree with the majority that the magistrate failed to specifically find that plaintiff's arthritis was a condition of the aging process. I write separately, however, because I disagree with its conclusion that the magistrate is the only proper person to make additional fact findings in this and "other cases where fact findings are incomplete." *Ante* at 509. Incredibly, the majority refuses to acknowledge the commission's authority to make findings of fact despite the plain language of MCL 418.861a *et seq.*; MSA 17.237(861a) *et seq.* and this Court's recent opinions in *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992), and *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507; 563 NW2d 214 (1997).[3] The majority's opin-

---

*employment in a significant manner.* [MCL 418.301(2); MSA 17.237(301)(2) (emphasis added).]

[3] I partially concurred and partially dissented in *Goff, supra.* While I recognize the majority's opinion to be controlling law, I am compelled to reaffirm my adherence to the principles, interpretations, and findings set forth in my partial concurrence and dissent in that case.

I also note that, while I disagreed with the majority in *Goff,* it at least recognized the commission's fact-finding authority. The *Goff* majority stated:

"If it appears on judicial appellate review that the [commission] carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not 'misapprehend or grossly misapply' the substantial evidence standard, and gave an

ion in this regard is inconsistent with, and marks a clear retreat from, this Court's recent recognition of the commission's authority to find facts.

I would hold that the commission did not err in finding that plaintiff suffered from a preexisting arthritic "condition[] of the aging process," which must be evaluated under the "significant manner" test. I would further hold that the commission had authority to apply this test and to make the requisite fact findings in doing so.[4]

---

adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal, or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member [commission] of decisions of thirty magistrates, and bestowed on the [commission] final fact-finding responsibility subject to constitutionally limited judicial review." [454 Mich 516-517, quoting the "four-part guide" established in *Holden*, 439 Mich 269 (citations omitted).]

The *Goff* majority further noted:

If in its review the [commission] finds that the magistrate did not rely on competent evidence, it must carefully detail its findings of fact and the reasons for its findings grounded in the record. If after such careful review of the record the [commission] finds that the magistrate's determination was not made on the basis of substantial evidence and is therefore not conclusive, then it is free to make its own findings. In such circumstances, the findings of fact of the [commission] are conclusive if the commission was acting within its powers. [*Id.* at 538.]

The Court's holding today undermines these prior acknowledgments in *Goff* that the commission may make findings of fact from the record and further erodes the worker's compensation system crafted by the Legislature and amended in 1985 to ameliorate the very serious and threatening backlog of cases in this area.

[4] Such authority, as discussed in more detail below, can be found in MCL 418.861a(10), (12), (14); MSA 17.237(861a)(10), (12), (14), which provide in relevant part:

(10) *The commission or a panel of the commission, may adopt, in whole or in part, the order and opinion of the worker's compensation magistrate* as the order and opinion of the commission.

I. THE COMMISSION'S FACT-FINDING AUTHORITY

I agree with the majority that the magistrate failed to make a specific fact finding regarding whether plaintiff's arthritis was a condition of the aging process. *Ante* at 504. However, I cannot agree with the majority's assertion that

> [w]hether a plaintiff's arthritis is part of the aging process is the type of medical factual inquiry that is reserved for the magistrate's fact-finding powers. Without a finding by the magistrate, the commission is not entitled to invoke the significant-manner test. [*Id.*]

That the Legislature has provided the commission with fact-finding powers cannot be disputed. MCL 418.861a(14); MSA 17.237(861a)(14) clearly refers to the commission's role as factfinder by providing:

> *The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive.* [Emphasis added.]

---

\* \* \*

(12) *The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record* if it is determined that the record is insufficient for purposes of review.

\* \* \*

(14) *The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive.* The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules. [Emphasis added.]

Further evidence of the commission's role as finder of fact appears in subsections 861a(10) and (12), which state in relevant part:

> (10) The commission . . . may adopt, *in whole or in part*, the order and opinion of the worker's compensation magistrate as the order and opinion of the commission.

> \*     \*     \*

> (12) The commission . . . *may remand* a matter to a worker's compensation magistrate *for purposes of supplying a complete record* if it is determined that the record is insufficient for purposes of review. [MCL 418.861a(10), (12); MSA 17.237(861a)(10), (12) (emphasis added).]

Subsection 10 allows the commission to adopt any part of the magistrate's findings.[5] This provision would impliedly allow the commission to both disagree with and make additional findings where so required. Further, subsection 12 vests discretion regarding the sufficiency of the record with the commission. Under this subsection, remands are appropriate only where the record is incomplete or insufficient for review. Where requisite facts exist on the record, there is no need to remand.

The commission's fact-finding role was acknowledged by this Court in *Holden* and *Goff, supra,* and *Woody v Cello-Foil Products (After Remand),* 450 Mich 588; 546 NW2d 226 (1996). *Holden* has neither been expressly overruled nor limited in regard to its

---

[5] Such a determination must, however, comport with MCL 418.861a(3); MSA 17.237(861a)(3) which provides:

> [F]indings of fact made by a . . . magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record.

recognition of the commission's statutorily prescribed fact-finding function. The majority is, therefore, incorrect in its assertion that:

> [a]ny interpretation of *Holden* as permitting the commission to make original fact finding on issues overlooked by the magistrate is refuted by our subsequent decision in *Woody*. [*Ante* at 506.]

Contrary to the majority's assertion, the *Woody* majority did not hold that the commission is without authority to make fact findings in the absence of initial findings by the magistrate. Rather, it held that, where the magistrate's opinion is so unclear that administrative appellate review becomes a guessing game,[6] the commission should remand for clarification from the magistrate instead of speculating.[7] This is a far cry from the majority's interpretation of *Woody*'s holding that would always disallow original fact finding by the commission even where, as here, the magistrate's opinion is clear and intelligible, but incomplete.

Because the commission in this case did not have to engage in speculation, this case is factually distinguishable from *Woody*. Indeed, in this case, the magistrate's opinion is clear, but incomplete because the magistrate did not make any finding regarding the relationship of plaintiff's condition to the aging process. Such a determination was necessary given the

---

[6] *Id.* at 597.

[7] Even the majority concludes that the magistrate failed to make a fact finding regarding age-relatedness. In so doing, the majority is acknowledging the distinction between the instant case, where we can adequately evaluate the magistrate's opinion, and *Woody*, where the majority thought it could not.

uncontested evidence of plaintiff's preexisting arthritic condition. In light of the magistrate's failure, the commission in this case, as in *Farrington v Total Petroleum, Inc*, 442 Mich 201; 501 NW2d 76 (1993), had the authority to make the requisite fact findings.[8]

Furthermore, the majority's claim that the magistrate is in a better position to make fact findings because the majority can observe "live testimony and argument"[9] is disingenuous and inapplicable to the facts of this case, in which three of the four experts to testify did so by deposition. See 439 Mich 286. In *Weiss v Jewish Home for the Aged*, the companion case to *Holden, supra*, this Court affirmed the commission's finding of fact and explained that "the magistrate is not in a better position than the [commission] to assess the evidence," which in that case, as in the instant case, primarily consisted of expert medical testimony by deposition. *Id.* at 286. Just as in *Weiss*, where the magistrate's failure to make factual findings did not preclude the commission from making such requisite findings, so too in the instant case, the magistrate's failure to make a finding regarding whether plaintiff's arthritis was a condition of the aging process does not preclude the commission from making such findings.[10]

---

[8] In *Farrington, supra*, this Court held that the plaintiff met his burden of proof under the significant-manner test even though the magistrate failed to "specif[y] whether he was imposing the significant manner test." *Id.* at 222.

[9] *Ante* at 508.

[10] This Court, in discussing Professor St. Antoine's recommendations, which were largely adopted by the Legislature in 1985 PA 103, noted that St. Antoine found that the administrative appellate board, currently the commission, should be

## II. THE COMMISSION'S FINDINGS IN THIS CASE

It is well established that findings of fact made by the commission are conclusive upon appellate review and may not be set aside by this Court if supported by *any* competent evidence. MCL 418.861a(14); MSA 17.237(861a)(14); *Holden, supra* at 263. In the absence of findings by the magistrate, the commission found that plaintiff suffered from the type of arthritis that is a "condition[] of the aging process" and that plaintiff's claim failed to survive the significant-manner test of subsection 301(2). This Court reviews these factual findings by the commission for "any competent evidence." MCL 418.861a(14); MSA 17.237(861a)(14). Because the commission's findings are supported by competent evidence, this Court should affirm.

A

The record in this case contains testimony from four doctors, all of whom recognized plaintiff's preexisting, arthritic condition and indicated that it was related to aging. From this deposition testimony, the commission concluded, "There is no dispute that plaintiff suffers from a type of arthritis which is a condition of the aging process." 1995 Mich ACO 1389, 1391.

---

"streamlined," by creating a new five- or possibly seven-member board, which should be able to handle the anticipated reduced number of appeals, *given the substantially reduced record-reading and fact-finding responsibilities . . . . [Civil Service Comm v Dep't of Labor,* 424 Mich 571, 585; 384 NW2d 728 (1986).]

The Court, thereby, acknowledged that the commission still had fact-finding authority and responsibility.

Specifically, in support of this conclusion, the commission quoted the following facts and findings of the magistrate.

"Dr. Christopher Schaiberger, M.D., saw plaintiff on June 3, 1992 on referral for a neurological examination of plaintiff's lower back and extremities. The examination proved normal. However, the doctor found significant "lumbar degenerative arthritic" changes, which in his opinion, preexisted October 17, 1991. Spurring at L5-S1 was observed. Dr. Schaiberger said that trauma could have initiated plaintiff's problems; but, he also noted that they could have developed spontaneously. Plaintiff, the physician said, should be limited to no bending, twisting and no lifting over 50 pounds without help. The doctor was surprised that plaintiff expressed a desire to return to work. Dr. Schaiberger admitted that plaintiff had degenerative changes throughout his entire spine. He would encourage plaintiff to lose weight. Plaintiff was said to be approximately 70 pounds overweight.

\*          \*          \*

"Dr. Harvey Andre, M.D., in a report based upon an examination of March 25, 1993 found degenerative changes at L3, L4-5. . . .

"There is agreement between Drs. Ross and Schaiberger that plaintiff has arthritic changes in his entire spine which predated October 17, 1991. I so find." [1995 Mich ACO 1391.]

The record provides further evidence that plaintiff's arthritic condition was age related. Indeed, two of the three experts quoted by the commission found arthritic degeneration of the whole spine, not just of the area that was directly injured in the October 1991 incident. Dr. Schaiberger found the degeneration to be significant, and he implied that plaintiff's overweight condition was a factor. Dr. Ross estimated the

significant degeneration to have started approximately ten years before, a date that was not associated with a prior injury or discovery of arthritis. Dr. Schaiberger testified that a majority of individuals plaintiff's age, in their mid-fifties, would have similar arthritic changes. Drs. Warner and Ross also testified and shared the opinion that plaintiff suffered from degenerative changes common in individuals of plaintiff's age.

I would find that these facts serve as competent evidence that plaintiff's arthritis was a condition of age. Therefore, because the record itself contains sufficient facts from which to make the requisite findings, there is neither any need nor statutory requirement that this Court, or the commission, remand to the magistrate.

B

In the absence of any finding by the magistrate, the commission found that the plaintiff's condition was related to the aging process and applied the significant-manner test of subsection 301(2) to conclude:

> [P]laintiff's work was not a significant factor in causing his disability.

> *     *     *

> We are not persuaded that the workplace incidents plaintiff complained of were of such a nature that they would have significantly contributed to plaintiff's already existing complaints caused by his degenerative arthritic condition. Certainly, when the record below is reviewed as a whole, it does not support a finding of a significant or pathological aggravation of plaintiff's longstanding arthritic condition. [1995 Mich ACO 1393, 1395.]

The commission started its review by noting a critical fact to which the magistrate failed to give much attention—plaintiff was treated by one of the experts, his chiropractor Dr. Warner, "for the same lower back pain on several occasions," five to be exact, before the 1991 injury. 1995 Mich ACO 1393. The commission then found Dr. Schaiberger's testimony failed to prove significant aggravation. Rather, it considered both Drs. Schaiberger's and Warner's testimony to be equivocal regarding the cause of plaintiff's increased pain after the 1991 injury. Indeed, Dr. Warner testified that the pain was greater immediately following the 1991 injury, but also found plaintiff's persisting pain was caused by his degenerative arthritic condition. Dr. Warner further testified that plaintiff suffered from stenosis, which is most commonly a degenerative change fairly common to individuals who, like plaintiff, are in their mid-fifties. Further, the doctor acknowledged that, because he did not review any pre-1991 medical examinations or reports, he could not measure the degree or extent of plaintiff's degenerative condition. Dr. Warner did testify, however, that he treated plaintiff for back pain that plaintiff claimed to have suffered from for twenty years or so.

In contrast to this, the commission found Dr. Ross' testimony to be unequivocal in its conclusion that plaintiff's work-related injury "at most caused a temporary symptomatic aggravation." 1995 Mich ACO 1395. Indeed, Dr. Ross' medical report projected that

[t]he hypertrophy of the facets and the degenerative joint disease changes will continue to predispose this patient to lower back complaints. However, these findings are preexisting prior to patient's work related injury of October 17, 1991.

Drs. Ross and Warner noted that plaintiff had been improving until he visited a chiropractor for an independent medical examination on December 2, 1991, at which time plaintiff claimed he was reinjured by a Dr. Hamilton. Finally, Dr. Ross concluded that plaintiff had "reached pre-accident status" when he saw him, and that "the patient's present diagnosis [was] not related to his work injury . . . ."

The significant-manner test under subsection 301(2) further required the commission to consider the totality of both occupational and nonoccupational factors, such as plaintiff's weight, age, diet, and prior injuries. *Farrington, supra* at 217, n 17. There is competent evidence in the record to suggest weight and age, as previously discussed, were significant causes of plaintiff's current arthritic condition. Indeed, Dr. Schaiberger recognized that plaintiff was overweight by roughly seventy pounds and that this "excess baggage" increased both the level of symptoms, or pain, and the deterioration of plaintiff's spine. Dr. Ross also indicated that some of plaintiff's back problems were caused by his excess weight. Furthermore, there is also competent evidence that an independent, subsequent injury could have caused or significantly contributed to plaintiff's on-going back complaints. Dr. Warner testified that plaintiff was reinjured during a December 2, 1991, independent medical examination. This examination, according to Dr. Warner, resulted in "approximately 13 additional orthopedic findings" of injury.

I would find that these facts and the evidence on the record constitute the requisite competent evidence to support the commission's factual finding that plaintiff's injury did not contribute to or aggra-

vate his arthritic condition in a significant manner as required by subsection 301(2) of the act. Accordingly, I would affirm the commission's reversal of the magistrate's open award under subsection 301(2).

TAYLOR, J., concurred with WEAVER, J.